### No. 12,700.

THE STATE OF LOUISIANA EX REL. JACKSON HEFFNER ET AL. VS. JUDGE OF THE FIRST JUDICIAL DISTRICT OF LOUISIANA.

Two questions are presented: First, will the writ of *mandamus* lie in the case as presented—that is to say, if issued would it operate as an invasion of the judicial discretion vested in respondent judge? Second, is this executor, after paying a small fine and serving a sentence of ten days in jail for contempt of the authority of this court and of the lower court, in refusing to deliver up the property of the succession, which he holds as an officer of the court, to be permitted to go free, and is the power of the court as for contempt exhausted?
Held: First, that the *mandamus* will lie.
Second, that the power of the court as for contempt is not exhausted.

O N APPLICATION for a Writ of *Mandamus.*

---

*Harrison & Aston, Leonard & Randolph,* and *D. T. Land* for Relators.

---

Respondent judge in *propria persona* (*Wise & Herndon,* and *Solomon Wolf,* of Counsel).

---

Submitted on briefs December 18, 1897.
Opinion handed down January 10, 1898.
Rehearing refused April 18, 1898.

---

The opinion of the court was delivered by

BLANCHARD, J.   William Heffner died and left an estate.   There were no forced heirs.   What purported to be an olographic will was admitted to probate.   It devised the estate to certain collateral heirs, to-wit: James Heffner and his children.   James Heffner, the brother of the dead man, was named as executor without bond.   He was not given the seizin.   He qualified and in his capacity as executor was put in possession of the property.   Other collateral heirs of the same

FIFTIETH ANNUAL REPORTS, 1898.        553

State ex rel. Heffner et al. vs. Judge.

degree of kindred (now relators herein) brought suit to annul the will for non-compliance with the requirements of the law.

The will was annulled. This left the estate to be inherited according to law. Jackson Heffner and others (relators) became entitled to part of the estate. The annulling of the will vacated the executorship.

Before the final judgment on the will was had, the executor had collected the succession assets and reduced its property to money.

He was cited to account and the amount due the relators definitely fixed at nine thousand eight hundred and ninety-seven dollars and twenty-nine cents.

A rule was then taken on him to compel the delivery of this portion of the succession assets.

This rule was dismissed in the court below, but on appeal the judgment was reversed, this court holding it to be the case of an executor who, under judicial authority conferred by his letters, had obtained a large amount of property, which by reason of the avoidance of the will should be turned over to the legal heirs.

The case was remanded with directions to make the rule absolute " so as to order the defendant to deliver to the heirs the succession funds accruing to them "—naming the amount. Succession of Heffren, 49 An. 1443.

This judgment was the mandate of this court sent back to the lower court for execution.

It was entered up below and the order to deliver duly issued to the executor officially and personally. He refused or failed to obey it, whereupon a rule issued to show cause why he should not be punished for contempt, which, upon trial, was made absolute, the executor, officially and personally, adjudged guilty of contempt and condemned to pay a fine of fifty dollars and to be imprisoned for ten days.

This punishment was inflicted, but without avail. The executor paid the fine and emerged from jail at the end of the ten days still refusing and failing to deliver, and the order of the court remained unexecuted.

Thereupon a second petition for rule was filed by relators setting forth the contumacy of the executor notwithstanding further formal demand made upon him for compliance, and a second order was obtained requiring him to show cause why he should not be pun-

ished for contempt in still refusing to obey the judgment of the court.

To this second rule he filed exceptions of *res judicata* and *autrefois convict*, and pleaded that the judgment on the first rule for contempt, which had been executed by payment of the fine and undergoing the imprisonment directed, operated as an absolute bar to further proceedings against him for contempt for non-compliance with the judgment of the court commanding delivery of the estate to the heirs.

These exceptions were sustained and the second rule dismissed.

This operated as a refusal on the part of the lower court to try the proceedings on its merits.

Thereupon the application now under consideration was filed here, praying this court for its writ of *mandamus* to compel the lower judge to reinstate and to try and determine the same according to law.

The allegation is made that it is the ministerial duty of the lower court to enforce the mandate of this court; that relators have the legal right to the enforcement of the same; that, to that end, contempt proceedings may be taken as often as defendant, on due demand, persists in his refusal of compliance; that the action of the lower court in dismissing the second proceedings for contempt is based on a construction of law palpably erroneous; that relators can obtain relief by no other means, and that the refusal to proceed in this way is a denial of justice and deprives relators of the only remedy adequate or available to meet the case.

The respondent judge answers that his judgment dismissing the second rule for contempt was rendered in the exercise of his judicial discretion and the same can not be reviewed by process of *mandamus;* and that he has complied with the mandate of this court in the Succession of Heffner, 49 An. 1443, and sought the execution of the judgment by punishing the executor to the full extent of the powers vested in his court.

He takes the position that the refusal to pay on the second demand does not constitute a second and distinct offence; that as there has been but one order issued by the court, there can be but one disobedience of it; and that as this disobedience has already been punished to the full extent of the sentence authorized by law, the power of his court is exhausted.

Two questions are by these issues presented for our determination: First, will the writ of *mandamus* lie in the case as presented—that is to say, if issued, would it operate as an invasion of the judicial discretion vested in respondent judge; second, is this executor, after paying a small fine and serving a sentence of ten days in jail for contempt of the authority of this court and of the lower court in refusing to deliver up the property of the succession, to be permitted to go free, and is the power of the court as for contempt exhausted?

As to the first, a distinction is recognized between cases where it is sought by *mandamus* to control the decision of an inferior court upon the merits of a cause, and cases where it has refused to go into the merits of the action upon an erroneous construction of some question of law or of practice preliminary to the case upon its merits. And while the decision of the court upon the merits of the controversy will not be controlled by *mandamus*, yet· if it has erroneously decided some question of law or practice presented as a preliminary objection, and upon such erroneous construction, has refused to go into the merits of the case, *mandamus* will lie to compel it to proceed. High on *Ex. Rem.* Sec. 151.

It is well settled that *mandamus* lies in all cases to compel an inferior court to proceed to the trial of a cause, and to set it in motion where its refusal to proceed amounts to a denial of justice. *Ib.*, Sec. 251; 34 An. 74, 1177; C. P. 830.

On what must be held to be an erroneous construction of a question of law and practice, the court *a qua*, in the instant case, dismissed the proceedings on exception. It was tantamount to a refusal to try on the merits a matter at issue, upon which depended the execution of a judgment of this court. The machinery of the court necessary to such execution was stopped by the dismissal of the proceedings. The order of *mandamus* now sought is necessary to set that machinery in motion again. Without it there would be a denial or indefinite postponement of the only mode accessible and available for the execution of the judgment directed by this court to be entered in the succession of Heffner, and necessary for the just settlement thereof.

It is for this court which rendered the judgment to take cognizance of the manner of its execution, when the proper manner of executing it is to be determined. C. P. 629.

The pending application can not be viewed as an effort to *control*

the decision of the lower court upon the merits of the cause, but a plain case where the inferior court, upon an erroneous construction of law and practice, refuses to take any action at all upon the merits of the proceedings presented, and where such refusal to act is a denial of justice. In such a case *mandamus* will lie to compel the court to reinstate the case and to proceed with its determination, and such order is not one that invades the judicial discretion of the lower judge. 34 An. 76, 1177; 41 An. 43; 20 An. 521; 6 R. 92; 11 La. 369.

This view is strengthened by a consideration of the powers conferred upon this court by Art. 90 of the Constitution.

As to the second question, which involves the powers of the court in proceedings as for contempt, it is well settled that disobedience of orders for the payment over of moneys, or the delivery of property by officers of the court, especially those holding in a fiduciary capacity, are punishable by such proceedings. Rapalje on Contempts, Secs. 15, 17, 130.

And which are commonly resorted to. *Ib.*, Sec. 35.

The refusal or neglect of a guardian, executor, administrator, trustee, or receiver to account or deliver over property when ordered by the court, is a contempt for which he may be committed. C. P. 131; 36 An. 356; 21 An. 297; Rapalje, Secs. 33, 130; Watson vs. Williams, 36 Miss. 331; Brown on Jurisdiction, p. 324 and note; 67 Iowa, 73; 69 N. Y. 536; 23 Blatch. 552; 27 Fed. Rep. 198; 114 Mass. 230; 51 Cal. 442; 55 Cal. 193.

The prevalent statutory and constitutional guarantees against imprisonment for debt are ordinarily held not to be infringed by the commitment to jail of such parties in contempt by reason of a disobedience of orders regarding the payment of money in their hands, or the delivery over of property. State *ex rel.* Audibert vs. Sheriff, 47 An. 335; Encyclopedia of Pleadings and Practice, Vol. 4, p. 803, citing 41 Ga. 466; 59 Ga. 523; 88 Ga. 361; 23 Minn. 411; 13 Phila. (Pa.) 430; 44 Pa. St. 247; 59 Wis. 24; 60 Mich. 167; 1 Blackf. (Ind.) 166; 37 Mo. App. 562.

An executor ordered to deliver up succession property is not to be considered a mere debtor, nor do the heirs of a succession claim merely as creditors. Such was the ruling of this court in the succession of Heffner, 49 An. 1443.

The power of the court to punish for contempt is exercised for two purposes:

1. To vindicate its dignity for disrespect shown to it or its orders.

2. To compel the performance of some order or decree of the court which it is in the power of the party to perform and which he refuses to obey. Am. and Eng. Ency. of Law, Vol. 3, p. 797.

And it can make no difference that the party can not presently perform the act commanded where it appears his incapacity arises through fault of his own, or where it is a case of non-performance, the result of his acts wilfully done, or where the contempt consists of an antecedent act, by which the accused rendered performance impossible. *Ib.*, p. 784 (note); Wartman vs. Wartman, Taney, C. C. 362; Rapalje on Contempts, Sec. 17; 49 An. 1443.

These general observations lead to the consideration of the case immediately in hand.

That this executor is viewed by our law as an officer of the court can not be denied. 38 An. 861; 49 An. 80.

He held the property and funds of this succession under the mandate of the court, and he was peculiarly subject to its orders with reference to the same. 2 An. 87. Being an officer of the court, and deriving his possession of the property from the court in his capacity as executor, he is in contempt of its authority in refusing or failing to surrender the same to the court, or upon its order. 36 An. 552.

To say that the court had authority to issue an order for the delivery of the property, which being disobeyed and the executor punished for such disobedience, the authority of the court is at an end, and no further proceedings as for contempt can be taken upon further demand made on him to comply with the order and his refusal, would put the court in a sad predicament indeed. It would be to infringe its dignity, lessen the respect it should always command, render its order to its own officers nugatory and impair its usefulness generally. See 31 An. 119.

Nor is it necessary before taking the second proceedings in contempt that the court should issue another order or render another judgment commanding delivery. It would be useless and futile to continue to issue such orders or judgments. One such judgment and order is sufficient, and the offence of the executor is *repeated* when, after one punishment for contempt, a demand is made upon him and he still refuses compliance. Separate convictions may be had

against the same party for commissions of distinct contempts occurring in the same proceedings.    Ency. of P. and P., Vol. 4, p. 803.

Under Code of Practice, Art. 131, the courts of this State are given power to punish *all contempts* of their authority, limiting the fine to fifty dollars and imprisonment to ten days, "*for each offence of that kind.*"

And Art. 308 prescribes that if one against whom an injunction is directed violate the same or refuse to obey, he may be imprisoned for not exceeding ten days which sentence *may be repeatedly inflicted until the mandate of the court is obeyed.*

There is no conflict between these two expressions of the law.    36 An. 945.

The words in the first article " for each offence of that kind," and those of the second article, " which sentence may be repeatedly inflicted," etc., are interchangeable terms.    Under the provisions of the first article, without the special direction of the second, punishment by imprisonment for violations of injunctions can be repeatedly inflicted until the order is obeyed.    So, too, a fine may be imposed for violating an injunction, under the terms of Art. 131, though Art. 308, relating specially to injunctions, is silent on the subject.    36 An. 945.    The two articles are laws in *pari materia* and to be construed together.    C. C. 17.    There was no intention on the part of the lawmaker to draw a distinction between contempts in violation of injunctions and contempts in violating any other order of court.

This court said in the Schoenhausen case, 47 An. 701:    " The penalty of ten days' imprisonment was fully authorized.    The defendant has served his imprisonment of ten days.    For any further violation of the preliminary or modified injunction, he may be punished *as the occasion arises.*"

So, in the instant case, the law justified the imprisonment of ten days and the fine of fifty dollars inflicted on the executor for refusing to obey the order of the court.    He paid the fine and suffered the imprisonment, but still refused to obey upon further demand made for compliance.    Thereupon *occasion arose* for a second infliction of the sentence for contempt.    It was " another offence of that kind," as contemplated by C. P. 131.    As correctly observed in the Schoenhausen case, " the law means punishment for the offence at the outset, and punishment afterward for the repetition."

If the first sentence of fine and imprisonment and the undergoing

of the punishment thereof is to be the end of the matter, then indeed might it be easy of accomplishment for dishonest representatives of successions, or minor heirs, to appropriate the estates or funds passing into their hands, suffering but small inconvenience for their act of spoliation. The law never contemplated this result.

We are constrained to hold that it was upon an erroneous construction of a question of law and practice that respondent judge declined to go into the merits of the second contempt proceedings presented to him and dismissed the same.

It is therefore ordered that the writ of *mandamus* applied for be made peremptory, that the petition and order for rule to show cause filed by the relators on October 9, 1897, in the Succession of William Heffner, No. 4885 on the docket of the District Court of Caddo parish, be reinstated, and that proceedings in trial and determination thereof on the merits be had according to law.

MR. JUSTICE BREAUX—I dissent.