MONROE, J.
By Act No. 74, p. 85, of 1868, and subsequent legislation, the General Assembly organized the parishes of Orleans,. Jefferson, and St. Bernard, including the city of New Orleans and several smaller municipalities, therein situated, into a “metropolitan police district,” and, creating a “board! of metropolitan police” for the governance of the same, authorized the board so created to apportion the expense of the system among the parishes and municipalities mentioned;, required them to levy the taxes needed to-meet their respective apportionments; and, under prescribed penalties, to turn over the proceeds of such levies (at one time) to the State Treasurer, for the use of the police board, and later to the board itself. By Act No. 35, p. 57, of 1877, the entire metropolitan police system was abolished, and all the laws-providing for its establishment and maintenance were repealed. There was, however, left a residuum in the shape of the uncollected taxes which had been levied under the legislation in question, for and during the years from 1868 to March 31, 1877, and which, until 1890, appear to have been paid, from time to time, into the city treasury, and, in the shape of an outstanding indebtedness, contracted by the police board. The particular case here presented arises out of the situation thus outlined, and is as follows: Relator prays for a writ of mandamus to compel the city of New Orleans to levy a special tax for the payment of a judgment obtained by him in his capacity as receiver of the board of metropolitan police. He alleges that he has registered his judgment in the office of the city comptroller, demanded payment thereof,- and otherwise complied with the requirements of Act No. 5, p. 10, of 1870 (Ex. Sess.), but without avail, and that no money has been, or will be, set aside for the payment of said judgment. That the act mentioned prohibits the issuance of writs of fieri facias *627 against the city, and, if it were otherwise, that the issuance of such a writ would be futile. “That the basis on which said judgment was rendered consisted of a contract .and statutory obligation, imposed on the city •of New Orleans, to levy, collect and pay over * * * a sum sufficient to pay the quota apportioned to said city under the act * * * creating the board of metropolitan police, ■and amendatory acts. That said contract and statutory obligation existed during the .years 1869 to 1877, inclusive, and, the obligation thus continuing, the fund which should have been provided constituted but one fund for the payment of the obligation thus created. That the maximum rate of taxation authorized by law, during said period of time, was not levied, and the duty to levy enough taxes to satisfy such obligation formed part •of said contract and statutory obligation, and has not been performed, and relator is entitled to a special tax for the payment of said .judgment. That the rate of taxation during the different years from 1868 to 1872 was unlimited, as regards the board of metropolitan police. * * * That, in the year 1872, by Act No. 73, p. 124, * * * the levy of the ■city tax'and the police tax was limited to 114 per cent., as follows: ‘A tax for the current city expenses, including police, and exclusive of interest and schools. This tax not to exceed, in any one year, 1% per cent, upon the assessed value of real, personal and mixed property.’ That during the years 1873, 1874, 1875, 1876, 1877, the limit of taxation was not reached by a larger margin than the •one mill tax which is necessary to pay and satisfy the judgment herein rendered.”
The city pleaded, in limine, the exception •of no cause of action, and we are of opinion that it might, properly, have been maintained. It is true that the petition alleges that the basis of the judgment upon which relator sues “consisted of a contract and statutory •obligation, imposed on the city of New Or- I leans, to levy, collect, and pay over to the board of metropolitan police” certain taxes which that board was authorized to call for; but contracts result from agreements, express or implied, and not from proceedings in invitum, whether legislative or judicial, and the fact that the state organized a metropolitan police force and created a board for its governance, with authority to demand and receive from the city of New Orleans certain taxes, to be levied and collected by the latter, for the maintenance of such force, “imposed” no contract and no obligation upon the city which the board so created could enforce, by any right of its own, or, for any use or purposes beyond that for which it was created, and, the state having abolished both the police and the board, the functions of the board ceased with its existence. The only standing, therefore, which relator could have for the purposes of this suit, would be as the representative of third persons with whom the defunct board, exercising the powers then vested in it, may have made contracts which depend upon the taxes to have been received from the city for their fulfillment, and there is no such ground of action stated in the petition.
Looking to the petition upon which the judgment sued on was rendered (and which was introduced on the trial of the instant case as part of relator’s evidence), we find it alleged:
“That each of said parishes was, under the law creating the metropolitan police district, directed to levy a special tax for the maintenance of the board of metropolitan police and payment of expenses; that, in accordance with, and in obedience to, the law on this subject, the city levied the special tax provided by law and has now. or should have, in its treasury, the amount above stated, being the collection of said special tax; that your petitioner annexes a detailed statement of the collections so made for the various years during which the tax was levied, which amounts, though collected, were never paid to the board of metropolitan police, nor to its representatives.
*«*#«**
“That the board of metropolitan police owed large amounts of money, and the whole of said *629 indebtedness due by the city is necessary to pay said indebtedness.”
It will thus be seen that there is a conflict ^between the allegation and prayer of the petition herein filed, upon the one hand, and the allegations of the petition upon which ■said judgment sued on is predicated, upon •the other; since, in the one petition, it is .alleged that “the rate of taxation, during the different' years, from 1868 to 1872, was unlimited, as regards the board of metropolitan police,” and that “the duty to levy enough taxes to satisfy such obligation has not been performed, and relator is entitled to a special tax,” etc., and the alleged, unused, or unexhausted power of taxation, whether conferred ■by the metropolitan police legislation or oth■erwise, is invoked, whereas, in the other, it was alleged that the taxes sued for had been levied and collected, and, upon the basis of .said allegations relator obtained judgment for ($136,082.62 less $12,607.05, or) $123,475.57, with certain interest, as for taxes which had been collected “in accordance with, and in ■obedience to the law” providing for the metropolitan police. Hubert v. City of New Orleans, 116 La. 507, 40 South. 853.
In the brief presented on behalf of relator, •for the purposes of the present application, his counsel say:
“This is not a proceeding to compel the city ■of New Orleans to levy a special police tax. The city has actually levied and collected the tax. The tax levy having been made, in compliance with the statute, and having been collected by the city, gave rise to a cause of action in favor of the receiver to enforce its payment to the board of metropolitan police. This cause •of action, therefore, could not have arisen until the city had levied and collected the tax and refused to pay over the proceeds.”
Assuming that the position that the relator now wishes to occupy is correctly stated in •the foregoing excerpt, we take it to be conceded that the city has levied and collected -all the taxes authorized or required by the metropolitan police legislation; and, further -■assuming that the relator represents the holders of the indebtedness (of the police board) referred to in the petition upon which he obtained his judgment (though it is not so alleged in the application now being considered), the question still remains:’ Does he disclose and make out a case which entitles him to a writ of mandamus to compel the city to levy and collect an additional tax in order to make good its failure to pay over the tax already levied and collected? This question, we think, must be answered in the negative.
Act No. 74, p. 85, of 1868, and subsequent legislation (particularly Act No. 92, p. 92, of 1869; Act No. 72, p. 102, of 1870; Act No. 94, p. 213, of 1870 .[Ex. Sess.]; Act No. 73, p. 124, of 1872; and Act No. 16, p. 35, of 1875), as has been stated, created a metropolitan police district of the three parishes of Orleans, Jefferson, and St. Bernard and the municipal corporations therein situated, including the city of New Orleans; established a state hoard for the governance thereof; authorized the board so established to make annual estimates of its expenses, and to apportion the same among, the parishes and municipalities constituting the district; and authorized and required the latter to raise, by taxation, the respective amounts so apportioned to them. When the act of 1868 was passed, thus requiring a special tax to be imposed upon the people of New Orleans for the maintenance of a police system, established without regard to their wishes, and, professedly, for the benefit of the people of other jurisdictions- as well as themselves, and the amount of which tax was to be determined by those at whose instance it was to be levied, the rate of taxation to which the city was limited, for all of its own purposes, including the public debt, schools, and police, was 1.5 per cent, and, of that rate, .85 percent. was required for the bonded debt, leaving barely .65 per cent, for schools, police, and other expenses, and (with the exception, perhaps, of an interval during the War) that *631 appears to have been the situation from the passage of the act of 1856, amending the city charter of 1852. See Act No. 164, p. 136, of 1856, and other acts of that year. The first call made for the newly created metropolitan police district, for the fiscal year of 1868-69, was for $877,695, for which a tax of 75 per cent, was imposed, and, there having been also imposed an extra park tax of 1% mills, the rate of taxation was increased from 1.5 per cent, for 1868, to 2.37% per cent, for 1869; 2.62% per cent, for 1870 ; 2.75 per cent, for 1872; and 3 per cent, for 1873. In the meanwhile, by Act No. 5, p. 10, of 1870 (Ex. Sess.), the courts were prohibited from issuing any writs against the city, or its officers, calling for the payment of money, and creditors of the city who obtained judgments against it were required to register them in the office of the comptroller, where payments were to await appropriations, to be made, in its annual budgets, by the city council. At the same session, a new legislative charter was granted to the city which conferred and limited the taxing power, as follows:
“To levy an equal and uniform tax * * * but said tax, added to the consolidated loan * * * tax and to the. special tax for the payment of the annual interest on the bonds issued by the city for subscriptions to the capital stocks (of certain railroads and the interest on certain bonds, other than consolidated bonds) shall not, in the aggregate, be more than 1% per cent., except in case of invasion or insurrection ; provided, it be sufficient to pay the interest on the consolidated and railroad bonds issued by city of New Orleans.” Act No. 7, p. 37, § 12, subd. 20, of 1870 (Ex. Sess.).
There was also passed at the extra session of 1870 an act which removed the metropolitan police system and the tax required for its maintenance entirely beyond the control of the Acts No. 5 and 7, thus referred to, by making it a misdemeanor, punishable by fine or imprisonment, for the treasurer of New Orleans to fail to pay over the proceeds of the police tax, and by declaring that all ordinances adopted by the city (or by the other members of the police district) should be void unless such tax should first be paid over. Act No. 94, p. 213, of 1870 (Ex. Sess.). By Act No. 73, p. 124, of 1872, the city was authorized to levy and collect a special tax fertile metropolitan police, for the year ending September 30, 1872, not to exceed % of 1 percent., and it was further provided that, thereafter, the entire tax for the current city expenses, including police and exclusive of interest and schools “should, in no year, exceed 1% per cent.” By Act No. 16, p. 35, of 1875, the apportionment for the metropolitan* police was divided into 12 parts, and the city treasurer was required to pay the tax weekly, as collected, to the police board (instead, of to the State Treasurer), and was subjected to heavy penalties in the event of his failing to make the payment (of the % per cent.) required in any one month; in addition to* which, the board was authorized to pledge the uncollected tax bills, which were required to be turned over to it, and to collect the-same without the intervention of the city.. By Act No. 35, p. 57, of 1877, as has been stated, the whole metropolitan police system was abolished, and all the laws relating, thereto were repealed.
Upon the trial of this easel in the district' court, Hr. P. O. Pont, the principal bookkeeper in the office of the city comptroller,, was sworn as a witness in behalf of the relator, and- we make the following excerpts from his examination, to wit:
Cross-Ex.: “Q, Have you had any occasion to* look into the amount of taxation exercised by the city of New Orleans, between the years including the year 1868, to the present time, with the idea in mind of ascertaining how much, unauthorized (?) power of taxation was left in the city of New Orleans? A. Yes; I did figure it out at your request. * * * Q. Did', you find, taking the statutory taxation, together-with special taxation, that there was any unau-. thorized power (?) to tax left in the city during - these years from 1868 to the present time? A. I did not. Q. In other words, the city exhausted all the power of taxation it had? A. Yes, sir.” Redirect Ex.: “I took five years-of taxes, levied, and five of taxes, authorized. Q. If you say that the taxes were exhausted in those five years, you are mistaken in that- *633 ■fact. A. What exhausted the taxes of those five .years was the subsequent levy. Q. By what? A. By ordinances. For instance, in 1880, there was a special judgment tax of .321; in 1881, •there was a special judgment tax of .284. Q. You say that there was a special tax. What •was that tax for? A. Judgments; it is called in the budget ‘special judgment tax.’ By the •Court: Q. Those extra levies were made after those five years entirely? A. Yes, sir; after-wards. Q. Then go on and give each year, first, or give the total of the five years. * * * A. The taxes levied for five years amount to -5.1765 per cent, of taxes levied. The authorization for those five years was 6.25 per cent., leaving in use (unused) during those five years, 1.0735 per cent. These five years were 1873, 1874, 1875, 1876, and 1877, and they were the ■only years in which the power of taxation was not exhausted. In subsequent years, beginning with 1880, 1881, 1882, 1885, and 1903, there was a levy of special judgment tax to the ■amount of 2.9067 per cent.; in other words, she is having a leeway of 1.0735. She has used 2.9067.”
The witness further testifies that he is unable to say, without examining the record, for what judgments the special tax referred to by him were levied. It is contended by ■counsel for relator that the judgments to •which the witness refers may have been predicated upon obligations contracted during ■other years than those for which the taxes for their payments are said to have been levied, and may therefore properly have involved the exercise of an unused taxing powder for such other years. But we are unable to reconcile this contention with the direct testimony of the relator’s witness to the effect that, in one way or another, the taxing power vested in the city for the years from 1873 to 1877, inclusive, has been exhausted. Be that as it may, the power which relator invokes was conferred upon the city for purposes distinct and apart from that of ■maintaining the metropolitan police system, which was provided for by other legislation. The city was authorized and required to levy, for the maintenance of 'that system, the tax ■called for by the police board, and, having ■done so, it exhausted the power conferred on it for that purpose, and cannot now be ■called on, in that behalf, to exercise a taxing power conferred on it for other and different purposes. Moreover, the witness states that the only years in which there was any unused taxing power were the years 1873, 1874, 1875, 1876, 1877, and we are not informed that the judgment upon which relator sues is predicated upon any obligation arising in those years. Non constat but that the obligations of the police board, now outstanding, were contracted during some other years, when the taxing power of the city was exhausted without reference to special taxes, subsequently levied, to pay judgments. If, however, relator represents any obligations contracted by the board subsequently to March 17,1870, there is no reason why, quoad any recourse (other than that provided by the metropolitan police legislation) to which he may be entitled, he should not be governed, as are other creditors of the city, by the provisions of Act No. 5, p. 10, of 1870 (Ex. Sess.), which act, so far as we are advised, was a competent piece of legislation as to debts thereafter contracted by the city. To the contrary, there is every reason why relator should be governed by that act, since the police board was authorized, by the special legislation to which we have referred, to enforce its demands for the taxes collected under that legislation, by resort to the criminal statutes, and later was authorized to make the collections itself, whilst, for the ordinary creditors of the city, no such remedy was provided. Upon the other hand, if it be true, as counsel contend, that the cause of action upon which relator now sues “could not have arisen until the city had levied and collected the tax, and refused to pay over the proceeds,” it was equally incumbent on relator to have fixed the date of such collection and failure to pay as at a time when there was some unused and unexhausted power of taxation to which he could appeal. But we have no information on that subject beyond that conveyed by the allegations of the peti *635 tion upon which relator obtained his judgment, to the effect that he was suing for taxes which the city had collected, between March 31, 1877 and 1890, or had collected prior to 1880, or prior to 1890.
Again, if the obligation sued on is to be regarded as having arisen only when the city collected the taxes and failed to pay them over, and such collection and failure occurred after the passage of Act No. 5, p. 10, of 1870, we repeat that we know of no reason why the remedy of relator should not be governed by the provisions of that act; but, even if that were not the case, it is quite certain that the courts cannot supply relator with a remedy by ordering the city of New Orleans to exercise a power of taxation which it is not shown to have possessed (when the obligation sued on arose), and which has been left unused to the present time.
Judge Cooley, in referring to the use of the writ of mandamus, in matters of this kind, says:
“The writ issues only when the party to whom it is directed is in default. It cannot confer upon him authority to do an act which could not voluntarily havé been done; but it is a mandate to compel the exercise of an authority which the respondent already possessed, but which he has wrongfully refused or neglected to (exercise) perform. It is therefore a complete answer to the application for the writ, in any case, that the respondent has no authority of law to do the act which the applicant would have performed.” Cooley on Taxation (3d Ed.) vol. 2, p. 1350.
And on page 1361, of the same volume (note) we find the following:
“Under a statute authorizing cities to issue bonds for internal improvements, and directing an annual tax levy to meet interest thereon, a city which, each year levied a tax sufficient, by computation, to meet this interest on water-' works bonds, cannot be compelled by mandamus to make an additional "levy to meet arrears due to unpaid taxes. Gay v. New Whatcom, 67 Rac. 88, 26 Wash. 389.”
The case of Fisk v. Police Jury, 116 U. S. 132, 6 Sup. Ct. 329, 29 L. Ed. 587, upon which relator relies, is inapplicable. In that case, the relator had rendered services as district attorney for the parish of Jefferson at a time when the power of the parish to impose taxes-for their compensation was limited to a certain rate, but was not exercised to the authorized limit, and it was held that the parish* could be compelled to exercise its power within such limit for the purposes of his (Fisk’s)claim, notwithstanding a subsequent change-in the law whereby the limit was lowered. The same rule has frequently been applied by this court. Thus, Mr. Justice Fenner, in. an opinion in which all the members of the-court concurred, referring to the jurisprudence of the court upon the subject of the-constitutional limitation of 10 mills imposed, upon the taxing power of parishes and municipal corporations, said:
“We therefore hold that the power of taxation possessed by the city was derived from two-sources, viz.:
“(1) From the state Constitution, to the extent of 10 mills, which was primarily applicable, so far as necessary, to the alimony of the-city.
“(2) From valid legislative authority, existing at the date of valid prior contracts, forming part thereof, irrepealable because protected by the Constitution of the United States, and therefore, continuing to exist until the contracts shall be discharged. * * *
“We hold, further, however, that the constitutional legislation was absolutely destructive of the right of every creditor to exact a higher rate of taxation for the satisfaction of his debt, unless his right was founded on an antecedent contract, protected from impairment by the-Constitution of the United States.” State ex rel. Wood v. Board of Liquidation, 40 La. Ann. 410, 4 South. 122.
The rights of creditors of the city, claiming under Act No. 5, p. 10, of 1870 (Ex. Sess.), have also frequently been passed on by this-court; the last expression upon the subject being to the effect that, under that act, and under Act No. 32, p. 39, of 1902, “judgments-against the city of New Orleans for debts of former years, can be paid only after statutory, necessary and usual charges have been-provided for, out of the revenues of eacb year.” State ex rel. Benedict v. City of New Orleans, 111 La. 374, 35 South. 605.
The judge a quo rejects relator’s demand; *637 as in case of nonsuit. There is no prayer by the city for an amendment.
The judgment appealed from is, accordingly, affirmed.