(63 South. 513.)

No. 20,236.

STATE ex rel. PARISH BOARD SCHOOL DIRECTORS v. CITY OF MONROE et al.

In re FORSYTHE, Mayor, et al.

(Nov. 3, 1913. Rehearing Denied Dec. 1, 1913.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 1206*)—REVERSAL—SUBSEQUENT PROCEEDING.

The judgments of this court, "whether confirming or reversing those appealed from," are required to be sent back, for their execution, to the inferior courts, which means that the inferior courts are vested with jurisdiction to enforce their execution; and, as the proceeding for contempt is one of the modes of enforcing the execution of judgments, the inferior courts are undoubtedly vested with jurisdiction of such proceedings for such purposes.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4671, 4690; Dec. Dig. § 1206.*]

2. APPEAL AND ERROR (§ 485*)—CONTEMPT (§ 24*)—SUSPENSIVE APPEAL—EFFECT.

The suspensive appeal not only suspends the operation and effect of the judgment appealed from but divests the court by which it was rendered of jurisdiction, and the jurisdiction which it thereafter acquires, by the affirmance or reversal of its judgment, is the jurisdiction to execute the judgment of the appellate court. Hence the date when that judgment becomes final is the date of the judgment to be executed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2228, 2264–2274; Dec. Dig. § 485;* Contempt, Cent. Dig. §§ 71–74; Dec. Dig. § 24.*]

3. CONTEMPT (§ 24*)—WHAT CONSTITUTES—INABILITY TO COMPLY WITH JUDGMENT.

The law (Act No. 189 of 1898) declares that, when a judgment is "in effect" a judgment for the payment of money, the failure of the party cast to comply with it shall not be construed as a contempt, where such failure is due to inability existing when the judgment is rendered; hence where a school board proceeds by mandamus, but without injunction or other conservatory writ, to compel a municipal corporation and its officers to "levy, collect, budget, and do all things necessary to turn over" to it a given proportion, for certain years, of the 10-mill tax which such corporation is authorized to impose, and obtains a judgment as prayed for, from which a suspensive appeal is granted to this court, and where, pending such appeal, the taxes for the years in question are collected, and the whole amount disbursed, so that, when the judgment of this court, affirming the judgment appealed from, becomes final and executory, the defendant corporation and its officers are unable to comply with it, their failure so to do cannot be construed as a contempt.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 71–74; Dec. Dig. § 24.*]

Mandamus by the State, on the relation of the Parish Board School Directors, against the City of Monroe and others. After final judgment the relator ruled defendants into the District Court to show cause why a writ of distringas should not issue against the City of Monroe and why the mayor and

councilmen should not be punished for contempt.

Stubbs, Russell & Theus, of Monroe, for relator. Percy Sandel, of Monroe, for respondent.

### Statement of the Case.

MONROE, J. In November, 1911, the parish board of school directors, of the parish of Ouachita, brought suit against the city of Monroe and its mayor and councilmen, praying that they be directed, by mandamus, "to levy, collect, budget, and do all things necessary to turn over" to it (the board) the proceeds of a 3-mill tax out of the annual tax of 10 mills, authorized to be levied for the years 1911 and each subsequent year; and, after the defendants had been ordered to show cause why the writ should not issue and had shown such cause as they were advised, there was judgment on December 22, 1911, in favor of relator, as prayed. According to the transcript, as it appears in this court, "counsel for defendant then moved in open court for order of devolutive and suspensive appeals," and the motion was granted; the appeal being made returnable on February 12, 1912, and having been lodged in this court a few days before the return day. Thereafter the case was argued in this court; and on January 20, 1913, an opinion was handed down, affirming the judgment appealed from. Defendants then applied for a rehearing, and it was not until February 17, 1913, when their application was denied, that the judgment of this court became final. Upon August 2d following, relator ruled defendants into the district court to show cause why a writ of distringas should not issue against the city of Monroe and why the mayor and councilmen should not be punished for contempt, alleging that they had collected the 10-mill tax authorized by law for 1911 and 1912, and had refused to pay over to it (relator) the proceeds of the 3-mill tax,

as directed by the judgment of the court. Defendants set up various grounds of exception and defense, and among them the following: That on February 17, 1913, when the judgment in question became final and executory, they had collected, and had expended in defraying the expenses of the city of Monroe, the entire proceeds of the 10-mill tax for the years 1911 and 1912, that, as to the taxes for those years, it was therefore impossible for them to comply with said judgment by paying over to relator the proportion of said proceeds claimed by it, and that they should not be punished for contempt because of their inability so to do.

"That no failure to pay an order or judgment, * * * which is, in effect, an order or judgment for the payment of money, can be construed as a contempt, when the failure to obey is due to inability to comply with the order or judgment, which inability existed at the date of the finality of said order or judgment."

After hearing, the rule was discharged, in so far as the application for the writ of distringas against the city of Monroe was concerned, and was made absolute as to the mayor and councilmen, who were held guilty of contempt and fined $50 each and costs, with an alternative jail sentence of ten days; the judge, as we are informed through the brief of counsel, "announcing orally, from the bench, that, unless the previous judgment of the district court was complied with by paying the 3-mill tax for 1911 and 1912, the fine would be followed by imprisonment, under the decision in the Heffner Case [50 La. Ann. 552, 23 South. 478]."

### Opinion.

[1] The facts which have been stated appear to be undisputed, but the counsel for the school board contends that, the district court having been vested with jurisdiction in the matter of the rule for contempt, and the rule having been regularly issued and

served, this court will not inquire into "the intrinsic correctness of the judgment complained of"; and the ruling of this court in the case of State ex rel. Barthet v. Judge, 40 La. Ann. 434, 4 South. 131, is cited in support of that proposition.

The Code of Practice (article 915) provides that the judgments of this court, "whether confirming or reversing those appealed from, shall be sent back for their execution to the inferior court," etc., which means that the inferior court is vested with jurisdiction to enforce the execution of the judgment so sent back; and, as the proceeding for contempt is one of the modes of enforcing the execution of a judgment, the inferior court is undoubtedly vested with jurisdiction quoad such a proceeding for such a purpose.

[2, 3] Since the decision in the case cited, however, the General Assembly has enacted a statute which declares:

"That failure to obey an order or judgment of court, when such order or judgment is in effect an order or judgment for the payment of money, shall not be construed as a contempt, if it appear that the failure to obey is due to inability to comply with the order or judgment, which inability existed when the order or judgment was rendered." Act 189 of 1898.

And as the act thus quoted was approved on July 14, 1898, and the ruling in the "Heffner Case," 50 La. Ann. 552, 23 South. 478, was handed down on January 10th preceding (the rehearing having been refused on April 18th), it seems not unlikely that the ruling may have suggested the passage of the act.

The learned judge of the district court has incorporated in his carefully prepared opinion, as authority for his ruling in this case, the following excerpt from the opinion in the Heffner Case, to wit:

"The power of the court to punish for contempt is exercised for two purposes: (1) To vindicate its dignity for disrespect shown to it or its orders. (2) To compel the performance of some order or decree of the court which it is in the power of the party to perform and which he refuses to obey. 3 Am. & Eng. Ency. of Law, p. 797."

"And it can make no difference that the party cannot presently perform the act commanded, where it appears that his inability arises through fault of his own, or, where it is a case of nonperformance, the result of acts willfully done, or where the contempt consists of an antecedent act by which the accused rendered performance impossible. Ib. p. 784, note; Wartman v. Wartman, Taney, C. C. 362 [Fed. Cas. No. 17,210]; Rapalje on Contempts, § 17; 49 La. Ann. 1443 [22 South. 380]."

Applying the ruling so made to the case before him, our learned brother found that the defendants in the rule, by collecting and disbursing the entire 10-mill tax between the date of the judgment of the district court (ordering them, in effect, to turn the proceeds of 3 mills over to the school board) and the date when the judgment of this court, affirming that judgment, became final, were guilty of "antecedent" acts which, though rendering it impossible for them to comply with that judgment, as so affirmed, also rendered them liable for contempt for their failure so to comply.

The duty of levying and collecting the entire 10-mill tax, which includes its alimony and also includes the 3-mill tax (the proceeds of which are claimed by the school board), is imposed upon the city of Monroe and its officers by law, and it is conceded that, in making such levy and collection, they also conformed to the judgment which had been rendered against them; the present complaint being directed against the "antecedent act"—the disbursement of the money collected,—and the consequent inability of the defendants in rule to turn over to relator the proportion for which it has obtained judgment.

The city of Monroe had, however, been granted a suspensive appeal from the judgment in question, and no injunction had been issued or prayed for to restrain it or its officers from disposing (pending the appeal) of the funds derived and to be derived from

the 10-mill tax, or any part of it, according to their conception of their obligations in the premises. In such case, as in any case where suit is brought for the recovery of particular personal property, and there is no writ of injunction issued against, or bond required of, the defendant, we know of no law whereby the mere pendency of the litigation imposes upon him the obligation of retaining such property in his possession. It is true that, if, in the end, the plaintiff obtains judgment for the property so claimed, and it is found that the defendant has, in the meanwhile, diverted or disposed of it, he may, by proper proceedings, be held to account in some other way; but the proceeding for contempt is not the proper proceeding. The appeal in such case not only suspends the effect and operation of the judgment but divests the trial court of jurisdiction, and the jurisdiction which it thereafter acquires, upon the affirmance or reversal of its judgment, is the jurisdiction to execute the judgment of the appellate court. C. P. 617, 618, 915; Pemberton v. Zacharie, 5 La. 314; State v. Judge, 19 La. 172; City Bank v. Walden, 2 Rob. 181; State v. Judge, 27 La. Ann. 684; State v. Clark, 33 La. Ann. 422; State v. Judge, 37 La. Ann. 853; State ex rel. Schoenhausen v. Judge, 47 La. Ann. 700, 17 South. 254; State v. Parsons, 119 La. 955, 44 South. 795. We conclude, therefore, that the judgment in question bore no other date for the purposes of the execution than that upon which the application for rehearing was refused by this court; that it is "in effect an order or judgment for the payment of money"; that, when it became executory, the defendants were unable to comply with it; and hence under Act 189 of 1898 cannot be held liable as for contempt for their failure to comply.

The decision of this court in the case of State ex rel. Hubert, Receiver, v. City of New Orleans, 119 La. 624, 44 South. 321 (referred to by the respondent judge), to the effect that the city could not be compelled to levy a special tax for the payment of Metropolitan police warrants, was reversed, we may remark, by the Supreme Court of the United States (State of La. ex rel. Hubert, Receiver, v. City of New Orleans, 215 U. S. 170, 30 Sup. Ct. 40, 54 L. Ed. 144), which held that the city, having diverted to other uses a tax levied and collected for the payment of the warrants, could be compelled to levy a special tax to make good the deficit. Whether the judgment so rendered is applicable to the conditions existing in this case is a question about which we express no opinion.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment of the district court, holding the relators herein guilty of contempt and imposing sentence therefor, be annulled and set aside and the relators discharged.