PROYOSTT, J.
A three-mill tax was voted in Jackson parish for the erection of a courthouse and a jail, and the police jury entered into a contract predicated on this tax for the erection of these buildings. Work had already begun, and $6,655 had been paid, when the tax was annulled by judgment of court. Thereupon the parties entered into another contract by which the jail was to be completed and the courthouse brought to a certain agreed upon stage of approximate completion for $53,000, payable, $3,000 cash, when the walls and footings of the jail should have reached a certain stage, and the balance as follows: $4,000 in 1913 and in 1914; $4,500 in 1915 and in 1916; $5,000 in 1917 and in 1918; $5,500 in 1919 and in 1920; and $6,000 in 1921 and in 1922 — all falling due on 1st February. For these deferred payments certificates of indebtedness were'to be issued, and for meeting these certificates the “excess of annual revenues” of said years “over statutory, necessary, and usual charges”' was dedicated.
This dedication of excess of future revenues was thus made in accordance with section 2 of Act 32, p. 39, of 1902, which reads:
“Sec. 2. That the revenues of the several parishes and municipal corporations of this state, of each year, shall be dedicated as follows: First, all statutory charges shall be paid from the respective funds upon which they are imposed; second, all charges for services rendered annually under time contracts; third, all necessary usual charges provided for by ordinance or resolution. Any excess of revenue above statutory, necessary and usual charges may be applied to the payments of amounts due and unpaid out of the revenues of former years. Police juries and municipal corporations shall also have authority to make, in any year, agreements or contracts dedicating in whole or in part the excess of annual revenues of subsequent years above statutory, necessary and usual charges, provided that no such agreement or contract shall have any longer terms fixed for payments than ten years from the date of the agreement or contract, and provided further, 'that no dedication of future revenues shall be made which, alone or with other prior dedications in force, shall exceed the estimated excess of revenues over .the statutory, necessary and usual charges of the year in ■ which the agreement or contract is made.”
In compliance with this last proviso, the police jury made an estimate of the revenues of the “statutory, necessary and usual charges” of the parish for the year 1912 — the year the contract was entered into — for ascertaining what was the excess of annual revenues of the ten subsequent years that was available for such dedication, and found that the assessment was $2,722,713, and the “statutory, necessary and usual charges” as follows:
Court and criminal expenses, 1% mills......$4,084 07
Salaries of officers, 1% mills...... 4,084 07
Bridge fund, 1 mill....... 2,722 72
Charity, % mill.......1,861 86
Public schools, 8 mills......8,168 13
Thus leaving a margin of 2% mills between the 10 mills which parishes are authorized to levy and the millage required for providing the sum of the “statutory, necessary and usual charges,” or an excess revenue of $6,806.13. An amount amply .sufficient to meet the certificates that were to be issued under the contract, which, with interest added, would be as follows: 1913, $6,500; 1914, $6,300; 1915, $6,600; 1916, $6,375; 1917, $6,650; 1918, $6,400; 1919, $6,650; 1920, $6,375; 1921, $6,600; and 1922, $6,300.
In July ofathe same year, 1912, a special tax of three mills for five years was voted to complete the courthouse (with some embellishments, as we gather); and a sepa *1037 rate contract, predicated on this tax, was made with the same contractor to do the work for $15,000. This tax was in the course of time all collected, and yielded $39,423.17; leaving a surplus of $24,423.17 over the $15,-000 called for by the said second contract.
The 2% mills, dedicated as aforesaid, yielded in the years 1912-1917, inclusive, more than enough to meet the payments to which they were thus dedicated, as appears from the following:
Year. Assessment. 2% mills. Payment.
1912...........$3,274,974 $ 8,187 43 $ 6,500
1913 ........... 2,847,484 7, US 21 6,300
1914 ........... 2,740,093 6,852 32 6,600
1915........... 3,408,976 8,522 44 6,375
1916........... 2,409,815 6,024 53 6,650
1917 ........... 2,823,167 7,057 90 6,400
$43,762 83 $38,825
The assessment for the year 1918, we may mention incidentally, was $3,104,091, yielding $7,760.22 for the courthouse and jail fund.
Notwithstanding these surpluses, $24,423.17 from the one tax and $4,937 from the other, the police jury held an election in April, 1918, for voting an additional tax of 3% mills for five years “for the purpose of paying the balance due on all outstanding bonds and indebtedness on courthouse and jail.” The tax was voted and was levied. Whereupon the present suit was filed, enjoining this tax, on the grounds that the supposed debt’ for the payment of which the said tax is levied has no legal existence; and that, if it has a legal existence, it can be paid only out of the 10-mill tax which the parishes are authorized by article 232 of the Constitution to levy.
Police juries, except in so far as by the hereinabove transcribed section 2 of Act 32 of 1902 they are allowed to dedicate the excess o'f future revenues by contract, are strictly limited in their expenditures, or contracting of debts, to the revenues of the current year. They are absolutely forbidden to anticipate, or impose charges upon, the revenues of future years. Thus section 1 of said Act 32 of 1902, and sections 2448 and 2449 of the Revised Statutes, read:
“Section 1. * * * That no police jury of any parish nor any municipal corporation in this state shall, in any one year, make any appropriation of, approve any claim against or make any expenditure from the annual revenue for that year, which appropriation, approved claim or expenditure shall, separately or together with other appropriations, approved claim or expenditures, be in excess of the estimated revenue of that year.”
And the Revised Statutes provide:
“Sec. 2448. The police juries of the several parishes, and the constituted authorities of incorporated towns and cities in this state, shall not hereafter have power to contract any debt or pecuniary liability, without fully providing in the ordinance creating the debt, the means of paying the principal and interest of the debt so contracted.
“See. 2449. The ordinance or enactment providing for the payment of the principal and interest of any debt created by any board of police or authorities of incorporated towns and cities, shall remain in full force until the debt and interest is paid.”
Of Act 30 of the Extra Session of 1877, of which the said Act 32 of 1902 is an amendment, this court, in the case of State v. King, 109 La. 801, 33 South. 776, said that it “prohibits the anticipation of revenues and the issuing of certificates of indebtedness,” and, referring to the case of State ex rel. Woulfe v. Judge, 107 La. 777, 32 South. 88, it said:
“In that case a contract of the city for the repaving of Canal street * * * was held to be null and void, because the price was payable out of the future revenues of the city, and because certificates to serve as evidence of the amount due the contractor were to be issued as the work progressed.”
It was, doubtless, in view of the decision in this Woulfe Case, which was handed down In February, 1902, that the said Act 32 of 1902, amending Act 30 of 1877, was adopted. But the amendment went no further than to allow excess of revenues to be dedicated, and only by contract, as hereinabove stated. In the *1039 case of Klees v. Police Jury, 131 La. 263, 59 South. 247, this court said:
“Police juries are prohibited by law from creating any debt without providing in the ordinance itself creating the debt the means of paying the same. Any debts sought to be created in violation of this-prohibition are simply null and void and incapable of judicial enforcement. This is well-settled law. Citizens’ Bank v. Town of Jennings, 107 La. 547, 32 South. 66; Glass v. Parish of Concordia, 113 La. 545, 37 South. 189. The corollary of this is that if the provision made for the payment of the debt fails to meet the payment, the legal situation stands just as if no provision at all had been made; and the debt becomes null, and incapable of judicial enforcement.”
In that case an excess of revenues was not allowed to be appropriated to the payment of a debt incurred in a previous year, because there had not been any dedication by contract, and that therefore the case presented was simply one where the revenues of one year were sought to be attributed to an .expense of another year. In Williams v. Police Jury, 135 La. 445, 65 South. 604, a contract was annulled because the debt sought to be created by it, payable out of the excess of revenues of subsequent years, was greater than the estimated excess of revenues of the year in which the contract was entered into.
[1] Prom the foregoing statutes and decisions it is very plain that, where a certain amount of future revenues has been contractually dedicated, the dedication is binding on the police jury like any other contract; that the amount of future revenues thus dedicated must be applied to the payment of the debt towards the payment of which it is dedicated; that the debt is payable only out of the provision thus made for its payment; and, as a consequence, has no legal existence outside of, or beyond, such provision. See, in that connection, the case of Hubert v. Mayor, 119 La. 624, 44 South. 321, where this court said:
“The city of New Orleans, having been specifically authorized and required to levy and | collect a tax for the maintenance of a system, of police, established for it in common with other political subdivisions of the state, and having levied and collected such tax, has exhausted the taxing power conferred for that purpose, and cannot be compelled, either by invoking the special power of taxation so conferred, or by invoking a power of taxation conferred for other and different purposes, to levy an additional tax in order to make good its failure to turn over the police tax so levied and collected.”
The said statutes were enacted for the purpose of operating as a rigid bridle upon police juries, and to prevent just such a situation as is presented in this case.
[2] It goes without saying that if the ordinary revenues cannot be used for paying the expenses incurred in a previous year for public improvements, except where there has been a contractual dedication, a fortiori may not an extraordinary, or special, tax be levied for that purpose.
The reason, or rather excuse, given for the levying of this tax, is that the police jury found it necessary to spend in “statutory, necessary and usual charges,” all the money that was dedicated to this courthouse and jail contract, as well as all the said surplus of the 3^-mill special tax,' and that in the future the same “statutory, necessary and usual charges” willcontinue to absorb all the ordinary revenues of the parish. The answer is that, after such a “dedication” has been made, either the police jury must respect it by cutting its coat according to its cloth, or the contractor must go hungry. Any other construction leaves it optional with the police jury to nullify the said statutes by simply making expenditures according to its good judgment, or, in other words, its discretion, instead of according to its purse. The discretion of the police jury would be put in place of the statutes. These statutes do not purport to aim simply at the abuse of discretion on the part of police juries, as suggested by learned counsel, but their manifest purpose is to bridle and control their discretion.
It is therefore ordered, adjudged, and de *1041 creed that the judgment appealed from be set aside; that the 3%-mill tax voted on April 2, 1918, on all the property in the parish of Jackson, be and is hereby annulled; and that an injunction issue as prayed for enjoining and prohibiting T. H. Bond, assessor of the parish of Jackson, from entering and extending said tax on the tax roll of Jackson parish, and enjoining and prohibiting W. S. Jones, sheriff and tax collector of Jackson parish, from collecting the said tax; and that the defendants pay the costs of this suit.